IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| PB&J TOWING SVC., I&II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 18-CV-02556 |
| | ) | |
| SAMUEL HINES, INDIVIDUALLY | ) | |
| AND AS COMMANDER OF | ) | |
| TRAFFIC/SPECIAL OPERATIONS | ) | |
| DIVISION OF THE MEMPHIS | ) | |
| POLICE DEPARTMENT; DEBRA | ) | |
| STREETER, INDIVIDUALLY AND AS | ) | |
| MEMBER OF MEMPHIS POLICE | ) | |
| DEPARTMENT BOARD; NATHANIEL | ) | |
| JACKSON, INDIVIDUALLY AND AS | ) | |
| MEMBER OF MEMPHIS POLICE | ) | |
| DEPARTMENT BOARD; KAREN | ) | |
| ARMSTRONG, INDIVIDUALLY AND | ) | |
| AS MEMBER OF MEMPHIS POLICE | ) | |
| DEPARTMENT BOARD; STACY | ) | |
| SMITH, INDIVIDUALLY AND AS | ) | |
| MEMBER OF MEMPHIS POLICE | ) | |
| DEPARTMENT BOARD; MARK | ) | |
| TAYLOR, INDIVIDUALLY AND AS | ) | |
| MEMBER OF MEMPHIS POLICE | ) | |
| DEPARTMENT BOARD; AND | ) | |
| THE CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendants. | | |

**ORDER**

This is a procedural due process action under 42 U.S.C. § 1983. Plaintiff PB&J Towing Svc., I&II, LLC ("PB&J Towing") alleges that it was deprived of its property interest in its

place on the Memphis Police Department rotational call list for wrecker[1] companies without a pre-deprivation hearing. (ECF No. 1.) Before the Court are plaintiff's motion for partial summary judgement and defendants' motions for partial summary judgement and for summary judgement. (ECF No. 92; ECF No. 88; ECF No. 91.)

**I.   Background**

Defendant the City of Memphis (the "City"), through its police department, maintains a list of wrecker companies to be called on a rotating basis when emergency wrecker services are required (the "List"). See Memphis City Ord. § 6-88-26(D). A company must meet requirements listed in Memphis City Ordinances to be placed on the List and may only be removed from the List for reasons defined in Memphis City Ordinances. See id.; Memphis City Ord. § 6-88-50. Defendant Samuel Hines is the Commander of the Traffic and Special Operations Division of the Memphis Police Department. Hines is the designee of the Director of Police Services charged with maintaining the List. (See Dep. of Hines, ECF No. 86-1, at 586.)[2]

The City has created geographic zones with a certain number of companies comprising the List for each zone. See Memphis

---

[1] A wrecker is a tow truck. See Memphis City Ord. § 6-88-2.

[2] Unless otherwise noted, pin cites for record citations refer to the PageID page number.

City Ord. § 6-88-29(B). Zone decals are issued to wrecker companies denoting their position on the List for a particular zone. (See Dep. of Fullilove, ECF No. 96-2, at 1190-91.) The List applies only to zones. See Memphis City Ord. § 6-88-29(B). Other decals issued, such as those indicating that a wrecker company has an emergency services permit, apply to the City as a whole and do not specify a zone. See Memphis City Ord. § 6-88-33(4). Only a decal indicating a zone denotes a place on the List, and then, only for the specified zone.

In the years leading up to 2017 and until at least May 2017, plaintiff PB&J Towing maintained a place on the List for Zone 6. (Pl.'s Resp. to Statement of Undisputed Facts, ECF No. 95-2, at 1048-51.) On May 18, 2017, after a dispute over lot inspections, PB&J Towing received a Cease and Desist Order preventing it from conducting any wrecker services in the City. (ECF No. 89, at 738-39.) Because of the Cease and Desist Order, the Memphis Police Department removed PB&J Towing from the List for Zone 6. (ECF No. 89, at 745.)

On May 19, 2017, after the Cease and Desist Order, PB&J Towing applied for a citywide emergency wrecker services permit and to be on the List for Zone 6. (ECF No. 89, at 740.) PB&J Towing's application to provide general and emergency wrecker services was approved on August 16, 2017. (Dep. of Fullilove, ECF No. 92-3, at 922.) PB&J Towing was also issued decals for

3

Zone 6. (Id.) Later that day, PB&J Towing was informed that the Zone 6 decals had been issued in error. (Dep. of Fullilove, ECF No. 96-2, at 1196.) PB&J Towing returned the Zone 6 decals, and the check paying for those decals was voided. (Id.) PB&J Towing was correctly issued emergency services decals. (See Id.)

PB&J Towing found out that it had not been added to the Zone 6 List on September 7, 2017, when Hines sent PB&J Towing a letter saying that its application to be on the List had been denied. (ECF No. 90, at 794.) PB&J Towing timely appealed. (Dep. of Hines, ECF No. 86-1, at 623.) On September 28, 2017, Hines convened an appeal hearing. (Id.) At that hearing, the Individual Defendants provided PB&J Towing with a list of complaints and violations and asked PB&J Towing to respond. (See id. at 630.) Because PB&J Towing was unprepared to respond, having heard the complaints for the first time, it asked for a continuance. (See id. at 632.) The hearing was reset to October 18, 2017. (See id. at 637.) At the second hearing, the panel voted to uphold Hines's decision to deny PB&J Towing's application for inclusion on the List. (ECF No. 95-8, at 1154.)

On August 14, 2018, PB&J Towing filed this lawsuit against the City and the Individual Defendants under 42 U.S.C. § 1983, alleging due process violations and a civil conspiracy arising from PB&J Towing's removal from the Zone 6 List. (ECF No. 1.)

4

PB&J Towing asserts that it was deprived of its constitutionally protected procedural due process property interest under the Fourteenth Amendment when Hines removed it from the List without notice or hearing. (Id. ¶¶ 29-34.)

On August 6, 2019, the Individual Defendants moved to dismiss PB&J Towing's claims. (See ECF No. 40.) The Court granted the motion to dismiss defendants Streeter, Armstrong, Smith, and Taylor. (ECF No. 69, at 363.) Defendant Jackson was dismissed separately in a later order. (ECF No. 74.) The Court also granted the motion to dismiss on the conspiracy claim as to all defendants. (ECF No. 69, at 369.)

Defendants Hines and the City moved for partial summary judgement on issues related to damages on April 28, 2020. (ECF No. 85.) That motion was amended on May 8, 2020. (ECF No. 88.) On May 13, 2020, defendants Hines and the City moved for summary judgement. (ECF No. 91.) On May 14, 2020, PB&J Towing moved for partial summary judgement on the issue of liability. (ECF No. 92.) All parties have responded and replied, and the motions are now ripe for consideration. (ECF No. 93; ECF No. 95; ECF No. 96; ECF No. 97; ECF No. 98; ECF No. 99.)

For the reasons stated below, plaintiff's motion for partial summary judgement is DENIED. Defendants' motion for partial summary judgement is DENIED as moot. Defendants' motion for summary judgement is GRANTED.

5

**II.  Jurisdiction**

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." PB&J Towing asserts violations of its constitutional rights and seeks relief under 42 U.S.C. § 1983. (ECF No. 1 ¶ 9.) Its claims arise under the laws of the United States.

**III. Standard of Review**

   **A. Motions for Summary Judgement**

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he moving party is entitled to summary judgment when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" George v. Youngstown State University, 966 F.3d 446, 458 (6th Cir. 2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

The non-moving party has the duty to point out specific evidence in the record sufficient to justify a jury decision in its favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp. v.

6

Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is "'such that a reasonable jury could return a verdict for the nonmoving party.'" See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]n order to survive a summary judgement motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The standard remains the same when both parties move for summary judgment. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own

7

merits and view all facts and inferences in the light most favorable to the nonmoving party." Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994) (citing Taft, 929 F.2d at 248).

### **B. Procedural Due Process**

Plaintiffs must prove three elements to establish a procedural due process claim under § 1983: (1) "that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment"; (2) "that they were deprived of this protected interest within the meaning of the Due Process Clause"; and (3) "that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." Med Corp., Inc. v. City of Lima, 296 F.3d 404, 409 (6th Cir. 2002) (quoting Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)).

"To have a property interest in a benefit, a person must have a 'legitimate claim of entitlement to it,' rather than a mere 'abstract need or desire for it,' or a 'unilateral expectation of it.'" Joelson v. United States, 86 F.3d 1413, 1421 (6th Cir. 1996) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

### **IV. Analysis**

PB&J Towing fails to cite any evidence establishing a genuine dispute about the property interest element of its case. To prove a procedural due process claim, PB&J Towing must

establish that it was deprived of a property interest. To do that, PB&J Towing must "point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit." Med Corp., 296 F.3d at 410. PB&J Towing asserts three theories purporting to show that it had a property interest in a place on the List. Even if a place on the List constituted a property interest, none of PB&J Towing's theories demonstrates that it was entitled to be on the List at the relevant time. It had no property interest.

### A. PB&J Towing was removed from the List because of the Cease and Desist Order.

PB&J Towing argues that it was not removed from the List for Zone 6 before Hines acted in September 2017, which, if true, would mean that PB&J Towing was on the List at the relevant time. Defendants argue that PB&J Towing was removed from the List because of the Cease and Desist Order in May 2017. PB&J Towing counters that the terms of the Cease and Desist Order did not mention removal from the List and, because it complied with the terms of the Cease and Desist Order by allowing inspection of its lots, it was never removed from the List.

Uncontroverted evidence demonstrates that PB&J Towing was removed from the List in May or June 2017, before Hines acted in September 2017. Defendants point to a June 2017 order from the

9

Memphis Transportation Commission upholding the Cease and Desist Order. In that order, the Commission states that "MPD removed PB&J from the MPD Emergency Rotation List" following the Cease and Desist Order. PB&J Towing does not point to any contradictory evidence in the record. No reasonable trier of fact could find that PB&J Towing was still on the List as of May or June 2017, following the Cease and Desist Order.

    **B.    The decals given to PB&J Towing in August 2017 did not create a property interest.**

A misunderstanding or erroneous belief cannot be the basis for a mutually explicit understanding that supports a claim of entitlement. See Perry v. Sindermann, 408 U.S. 593, 601 (1972). A mistake is such a "misunderstanding" or "erroneous belief." Mistake, Black's Law Dictionary, (11th ed. 2019).

PB&J Towing argues that the issuance of decals in August 2017 demonstrates that it was put on the List at that time. First, PB&J Towing argues that it was issued Zone 6 decals that denote a place on the List. Second, PB&J Towing argues that it was issued emergency services decals that denote a place on the List. Because both conclusions are based on mistakes, PB&J Towing demonstrates only a unilateral expectation of a place on the List, which is insufficient to create a property interest.

### 1. The mistaken issuance of Zone 6 decals created only a unilateral expectation of a property interest.

In this case, Zone 6 decals were issued to PB&J Towing by mistake; however, PB&J Towing was promptly notified of the mistake, was refunded its payment, and returned the decals. Such a mistake does not create the type of "reliance" in a property interest that must not be "arbitrarily undermined." Roth, 408 U.S. at 577.

Where a mistake creates no legitimate expectation of a benefit, there can be no property interest. For example, in House v. Univ. of Central Ark., an instructor received an appointment letter that mistakenly identified her appointment for the following academic year as tenure-track instead of terminal. 684 F. Supp. 222, 226 (E.D. Ark. 1988). Because she had already served as an instructor for the maximum number of years in a tenure-track role without gaining tenure, she argued that the letter saying she was to serve an additional year in a tenure-track role proved she had been granted tenure. Id. at 227-28. However, plaintiff had removed herself from consideration for a tenured position and so could not have been granted tenure. Id. The court held that there was no property interest because the plaintiff should have realized that a mistake had been made in the appointment letter and so could have had no legitimate expectation of tenure. Id. at 228.

11

A mistake can only create a property interest where there was reason to rely on it. That was the situation in Leland v. Miss. State Bd. Of Registration for Prof'l Eng'rs and Land Surveyors. 841 F. Supp. 192 (S.D. Miss. 1993). Plaintiff had been issued a license as an engineer by mistake, but the court held that he had a property interest in his professional license. Id. at 198-99. In that case, the license issued in June and the plaintiff was not notified of the mistake until November. Id. at 194. Mississippi law established that the issuance of a license was evidence that the person named on the license was entitled to the rights and privileges of an engineer. Id. at 199. The court held that under these circumstances, the plaintiff had a property interest in his license. Id.

The instant case is more like House than Leland. Like House, but unlike Leland, PB&J Towing had timely notice that there was a mistake, which reduces reliance on the mistake. Although in House notice of the mistake was immediate because the mistake was obvious, PB&J Towing was notified of the mistake later the same day, not months later as in Leland. Most importantly, notice of the mistake came well before Hines acted in September 2017. PB&J Towing did not have reason to rely on the mistaken issuance of decals as evidence that it was on the List when Hines acted.

### 2. PB&J Towing's mistaken understanding of the significance of the decals it was correctly issued creates no property interest.

PB&J Towing disputes the meaning of the citywide emergency services decals that it was correctly issued in August 2017. PB&J Towing insists that the emergency decals denote a place on the List for Zone 6. It is unclear why, if that were the case, there would be a need for separate zone decals.

City ordinances demonstrate that emergency services decals do not limit emergency towing to a zone, meaning that emergency services decals cannot be evidence that a wrecker company was added to the List for a zone. Section 6-88-33(4)(c) is the relevant section for the issuance of emergency decals. See Memphis City Ord. § 6-88-33(4)(c). That section states that "[t]he term 'emergency wrecker service' means the removal of motor vehicles from the streets, alleys, roads, highways and thoroughfares within the area of the metropolitan government. . . ." Id. The section provides that an emergency services decal authorizes emergency towing throughout the City, meaning that no zone limitation is implied by the issuance of an emergency services decal. See id. Zones are created only for purposes of the List. See Memphis City Ord. § 6-88-29(B).

PB&J Towing points to the application that it completed in May 2017 as evidence that the emergency services decals denote a place on the List. PB&J Towing argues that its application

13

demonstrates that emergency towing services and the List are the same thing. However, the application clearly shows that a towing company can apply for an emergency services permit while choosing not to apply for a place on the List. A check box allows a company to apply for an emergency services permit. A separate check box allows a company to select "No" to a request to be on the List. If emergency services and the List were synonymous, a company could not apply for one without also applying for the other. The application in use at the relevant time demonstrates that it was possible to apply for an emergency services permit without applying to be on the List. PB&J Towing's mistaken belief that emergency services decals denote a place on the List creates only a unilateral expectation of a place on the List. PB&J Towing cannot demonstrate a property interest because it was issued emergency services decals.

    **C.    There was no mutually explicit understanding that PB&J Towing was entitled to a place on the List.**

A mutually explicit understanding that is cognizable under state law, such as an implied contract, can create a property interest. See Bishop v. Wood, 426 U.S. 341, 344 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law."); Woolsey v. Hunt, 932 F.2d 555, 563-

14

64 (6th Cir. 1991) (holding that analysis of state law is necessary to determine whether there is a valid implied contract creating a property interest). PB&J Towing argues that, even if it was not on the List at the relevant time, there was a mutually explicit understanding between the City and towing companies that being added to the List was a "rubber stamp affair." PB&J Towing points to no evidence establishing such an understanding or implied contract.

Tennessee law recognizes implied contracts. Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 153 (Tenn. 1966). "A contract implied in fact is one that arises under circumstances which show mutual intent or assent to contract . . . . Such a contract or agreement may result as a legal inference from the facts and circumstances of the case." Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 407 (Tenn. 2002) (internal quotations omitted). An implied contract "must be sufficiently definite to be enforced" and "cannot be accomplished by the unilateral action of one party, nor . . . by an ambiguous course of dealing between the two parties from which differing inferences . . . might reasonably be drawn." Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990).

No implied contract or mutually explicit understanding cognizable under Tennessee law between PB&J Towing and the City

15

supports PB&J Towing's claim of entitlement to a property interest. PB&J Towing points out that the City had not denied any application to be on the List from any towing company during the prior twenty years. That course of dealing is too indefinite to establish a mutually explicit understanding between PB&J Towing and the City. The alleged course of dealing fails to establish even which towing companies would be parties to such an implied contract with the City. The terms of such a contract for rubber stamp approval of applications to be on the List are hardly established in a sufficiently definite form that a court could enforce them.

PB&J Towing's reliance on Gregg v. Lawson to show that a course of dealing can create a property interest in being placed on the List is misplaced. 732 F. Supp. 849 (E.D. Tenn. 1989). In Gregg, a course of dealing helped to establish a property interest for a towing company. Id. at 853. However, the property interest in that case was remaining on the rotating call list and not having an application for a rotating call list approved. Id.; cf. Durham v. Jones, 698 F.2d 1179, 1181 (11th Cir. 1983) (holding that towing company that was not on a rotating call list had no property interest in being added to that list).

PB&J Towing fails to cite evidence establishing a mutually explicit understanding that it was entitled to a place on the

16

List that would be recognized by state law. It has shown no property interest in being added to the List.

**V.   Conclusion**

PB&J Towing fails to create a genuine dispute of material fact about whether it was entitled to a place on the List when Hines denied its application. Because a property interest is an element of PB&J Towing's § 1983 claim, and it has not shown it had a property interest, plaintiff's motion for partial summary judgement is DENIED. Defendants' motion for partial summary judgement is DENIED as moot. Defendants' motion for summary judgement is GRANTED.

So ordered this _15th_ day of September, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE